UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KELLI MILES, DANIELLE MORAN-COMBS,
and ERIN MORAN,

                              Plaintiffs,

      v.                                          **DECISION AND ORDER**
                                                      12-CV-599S

THOMAS GILRAY,

                              Defendant.

## I.  INTRODUCTION

This is an action for injunctive relief and damages for sexual harassment in the housing context, under the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3601, et seq. Presently before this Court is Plaintiffs' *ex parte* Motion for an Expedited Hearing and for a Temporary Restraining Order ("TRO").  Plaintiffs seek a TRO to temporarily enjoin Defendant from commencing eviction proceedings against them in state court and from having any personal contact with them.  Defendant has not yet been served with the Complaint, which alleges that Defendant created a hostile living environment for Plaintiffs in violation of 42 U.S.C. § 3604 (b), and retaliated against them in violation of 42 U.S.C. § 3617.  For the reasons stated below, Plaintiffs' motions are granted.

## II.  FACTS

Plaintiffs are all females who live in the Sherwood Court Mobile Home Park, which Defendant owns.  (Complaint, Docket No. 1, ¶¶ 5-8, 12.)  Plaintiffs each own their mobile homes but rent their lots from Defendant.  (Complaint, ¶ 13.)  There are 17 lots in the park. (Complaint, ¶ 14.)

Defendant has owned Sherwood Court for approximately three years. (Complaint, ¶ 15.) Plaintiffs contend that Defendant has declared a "right" to enter their homes at his discretion. (Complaint, ¶¶ 16, 17.) Defendant exercises this "right" to primarily enter the homes of the female residents of the park without permission. (Complaint, ¶ 17.) On multiple occasions, Defendant has either entered or attempted to enter each of the plaintiff's homes, unannounced and uninvited. (Complaint, ¶ 17.) He has repeatedly appeared late in the evening, often while intoxicated. (Complaint, ¶ 18.)

Defendant has also solicited sex from Plaintiffs and has repeatedly made unwanted sexual advances toward them. Defendant sends Plaintiff Miles unwanted text messages, remarks on her appearance, tells her what kinds of clothes she should wear, asks her to leave her husband for him, and blows kisses and stares at her. (Complaint, ¶ 19.) Defendant has also referred to the child Miles has with her husband as "our" son. (Complaint, ¶ 21.) Defendant's conduct has caused Plaintiff Miles and her husband to install video surveillance around their home for protection. (Complaint, ¶ 20.)

Defendant has allegedly engaged in a similar course of conduct with Plaintiff Moran-Combs. He sends her numerous text messages requesting sex, despite Plaintiff Moran-Combs directive that Defendant stop texting her. (Complaint, ¶ 23.)

Defendant has also made sexual advances toward Plaintiff Moran. He has told her that he is attracted to her and wants to see her. (Complaint, ¶ 24.) He has come to her home between midnight and 2:00 a.m. and refused to leave when asked. (Complaint, ¶ 24.) He has also made unwanted sexual advances toward her, including sitting closely to her on a couch, grabbing her, rubbing her leg, and touching her breasts and genital area.

(Complaint, ¶ 25.)  This course of conduct waxes and wanes depending on whether Defendant's wife becomes aware of his conduct.  (Complaint, ¶¶ 27– 28.)

In February 2011, Defendant was arrested after engaging in a stand-off with police at his home, during which he fired a weapon at Cattaraugus County Sheriff's deputies.  (Complaint, ¶ 31.)

In December 2011, Defendant served Plaintiff Miles and her family with a 6-month termination notice, advising that their lot would no longer be used as a rental lot and they would therefore have to vacate the premises.  (Complaint, ¶ 22.)  Defendant also advised a group of tenants that he wants to rid the park of existing tenants so that he can fill it with single mothers.  (Complaint, ¶ 29.)

### III.  DISCUSSION

**A.    Plaintiffs' Motion for an *Ex Parte* Temporary Restraining Order**

  **1.    Legal Standards**

Injunction relief "is an extraordinary and drastic remedy which should not be routinely granted." Med. Soc'y of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977); see also Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 33 (2d Cir. 1991).  "The legal standards for granting a temporary restraining order and a preliminary injunction are the same." Young-Flynn v. Wright, No. 05 Civ. 1488, 2007 WL 241332, at *7 (S.D.N.Y. Jan. 26, 2007) (quoting Gund, Inc. v. SKM Enters., Inc., No. 01 Civ. 0882, 2001 WL 125366, at *1 (S.D.N.Y. Feb. 14, 2001)).  The movant must demonstrate

> (1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.

N.A.A.C.P., Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995) (quoting Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991)); see also SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc., 211 F.3d 21, 24 (2d Cir. 2000).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983)(citations omitted); see also Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (the threat of irreparable harm is the *sine qua non* for the granting of injunctive relief). The claimed irreparable harm must be "actual and imminent," not "remote [or] speculative," or merely a possibility. Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir. 1999); see also Borey, 934 F.2d at 34.

Determining likelihood of success on the merits often requires courts to judge the merits of the case at a very preliminary stage of the litigation. Because of this preliminary posture, when coupled with a demonstration of irreparable harm, the movant need only establish that success on the merits is more probable than not. As the Second Circuit has stated:

> A movant seeking to avail himself of the first alternative [likelihood of success on the merits] need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt.

Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988) (quoting Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)); see also Connor v. New York State Comm'n on Judicial

Conduct, 260 F.Supp.2d 517, 520 (N.D.N.Y. 2003); Tremper v. Ulster County Dep't of Prob., 160 F.Supp.2d 352, 356 (N.D.N.Y. 2001); Varsames v. Palazzolo, 96 F.Supp.2d 361, 366 (S.D.N.Y. 2000).

Finally, although no preliminary injunction can issue without notice, see Fed. R. Civ. P. 65(a)(1), a temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney if

> (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b); see also Chapman v. Merch. Mart Props., No. 2:07-CV-61, 2007 WL 922258, at *2-*3 (D.Vt. Mar. 23, 2007); Bridges Network, Inc. v. Rafiq, No. 06-CV-31E, 2006 WL 145912, at *2 (W.D.N.Y. Jan. 19, 2006).

### 2. Analysis

The FHA makes it unlawful to discriminate against any person "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). This includes sexual harassment and "quid pro quo" harassment, which "occurs when housing benefits are explicitly or implicitly conditioned on sexual favors." Glover v. Jones, 522 F. Supp.2d 496, 503 (W.D.N.Y. 2007) (citations omitted). The FHA also makes it unlawful to retaliate against any person who seeks to assert or enforce his or her fair-housing rights. 42 U.S.C. § 3617.

Having considered Plaintiffs' motion, this Court finds that an *ex parte* temporary restraining order is necessary to prevent Plaintiffs from suffering irreparable harm before a decision on the merits of their preliminary injunction application and fair-housing claims can be rendered.  See Masel Supply Co., 719 F.2d at 45.  As alleged in the Complaint and set forth in the supporting attorney affidavit, Defendant has expressed his intention to evict tenants and has started that process as to Plaintiff Miles.  (Complaint, ¶¶ 22, 29; Affidavit of Laurie M. Lambrix, Docket No. 4, ¶ 8.)  The notice Defendant sent to Plaintiff Miles authorizes him to begin eviction proceedings on July 1, 2012. (Id.) Plaintiff have therefore demonstrated that they stand to suffer imminent irreparable harm.

Moreover, the alleged facts also demonstrate that Plaintiffs have an adequate likelihood of success on the merits of their claims.  Given the course of conduct set forth in the Complaint, Plaintiffs will more likely than not be able to establish that Defendant violated the Fair Housing Act through sexual harassment and retaliation.

Finally, Plaintiffs have made a sufficient showing that Defendant should be restrained from having any personal contact with them.  Taking Plaintiffs' allegations as true, Defendant has demonstrated that he feels entitled to enter their homes uninvited, he has appeared at late hours and refused to leave, and he has physically asserted himself, at least against Plaintiff Moran.  Further, he has displayed violent tendencies, as demonstrated by his stand-off with law enforcement, during which he fired a weapon at officers.

Knowledge of Plaintiffs' lawsuit against him could cause Defendant to immediately begin eviction proceedings against Plaintiffs or worse, react violently against them. Consequently, this Court finds that this TRO should issue without notice to Defendant.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs' Motion for a Temporary Restraining Order is GRANTED.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for a Temporary Restraining Order and Motion for Expedited Hearing (Docket No. 3) are GRANTED.

FURTHER, that Defendant is enjoined from instituting eviction proceedings against the plaintiffs in state court.

FURTHER, that Defendant is enjoined from having any contact of any kind with Plaintiffs.

FURTHER, that Plaintiffs must continue to pay Defendant lot rent and any other related fees.

FURTHER, that Plaintiffs shall serve Defendant with their Complaint and motion papers, together with a copy of this Decision and Order, by July 3, 2012.

FURTHER, that counsel for Plaintiffs and Defendant shall appear before this Court on July 10, 2012, at 10:00 a.m., for a status conference to discuss Plaintiffs' Motion for Preliminary Injunction.

SO ORDERED.

Dated:   June 29, 2012
       12:11 p.m
       Buffalo, New York

                                  /s/William M. Skretny
                                  WILLIAM M. SKRETNY
                                      Chief Judge
                                United States District Court